IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| JOSHUA ZACHARIAH TOVAR, | |
| Plaintiff, | Case No. 20-CV-63-LTS-KEM |
| vs. | **REPORT AND RECOMMENDATION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

_____

Plaintiff Joshua Zachariah Tovar, proceeding pro se, seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Tovar challenges the residual functional capacity (RFC) determination by the administrative law judge (ALJ), Julie K. Bruntz, and the Appeals Council's failure to admit new medical-opinion evidence into the record. I recommend **affirming** the Commissioner's decision.

## I. BACKGROUND

Tovar, born in 1984, has worked a variety of jobs over the years, with his longest job (other than self-employment) lasting for four years. *See* AR 193, 210, 219, 222. He last worked full time at a Target distribution center beginning in 2012. *See* AR 210, 222, 292, 455. Treatment records reflect that he missed some work in 2015 due to his mental health. An intake counseling note from June 2015 reflects that Tovar was on medical leave due to anxiety and panic attacks. AR 289. Tovar's psychiatrist, Darko Zdilar, MD, summarized in early October 2015 that Tovar had missed work and used vacation time due to worsening anxiety, but now felt "ready to go back to work with the work

load as outlined in our letter to the company in September." AR 514. Tovar went back to work on a reduced schedule for a few days, but he told Dr. Zdilar on October 22, 2015, that he had not worked since October 13, and he requested a new doctor's excuse. AR 517-18. He reported feeling ready to go back to work with no restrictions now. AR 518. On November 5, 2015, Tovar told Dr. Zdilar he had not been back to work, reporting chest pain, tightness, shortness of breath, and panic in the mornings. AR 521-22. Throughout November 2015, Tovar continued to report being unable to return to work due to anxiety and panic attacks, and Dr. Zdilar adjusted Tovar's medications and completed the paperwork for his unpaid leave under the Family Medical and Leave Act (FMLA). AR 521-31. In mid-December 2015, Tovar reported that he was no longer having "full-blown panic attacks," but he continued to report chest pain and anxiety due to a custody battle with his ex-wife over their two young daughters. AR 539-40. He noted needing to move around to redirect his thoughts, and he worried about returning to mindless, repetitive packing work where he would be trapped in one location. AR 538-39. By the end of December 2015, Target had indicated he needed to return to work soon or face termination, and Dr. Zdilar completed paperwork to allow Tovar to return to work with the accommodation of being able to move to a different area when he developed anxiety. AR 544. Target identified two possible positions for Tovar that would satisfy Dr. Zdilar's proposed accommodation, packer and warehouse worker, and in mid-January 2016, Dr. Zdilar indicated the warehouse worker position seemed like a better fit and released Tovar back to work for the next day. AR 548, 551.

Treatment records reflect that Tovar was able to return to work in 2016, but he also continued to take FMLA leave at times. In mid-February 2016, Tovar told Dr. Zdilar he had not yet returned to work because he had not heard from Target, although he said he had not been having panic attacks and suggested he was ready to return to work. AR 556. In mid-March 2016, Tovar noted he was supposed to go back to work, but there were problems with his paperwork, and his employer wanted additional documentation. AR 568, 570. In mid-April 2016, he told Dr. Zdilar that his first week

at work "went great," but then there was an "incident" with his boss that caused him to panic, and he had to take time off. AR 574. He said he would be ready to return to work the next week, and Dr. Zdilar completed new paperwork. AR 576. On May 10, 2016, Tovar indicated he had not been able to return to work on the date indicated in Dr. Zdilar's previous letter due to gastrointestinal issues from medication adjustments, and he was frustrated that Target would not allow him to return to work without new paperwork. AR 578, 580. Dr. Zdilar wrote him a new note indicating he was physically and mentally able to return to work immediately. AR 580. At his next appointment with Dr. Zdilar in mid-June 2016, Tovar indicated that "[w]ork was going good," but then he "started missing work," and he needed Dr. Zdilar to "fill out [the] form again." AR 582. Dr. Zdilar's note indicated mood and anxiety problems prevented him from going to work on a consistent basis, but he was now ready to return to work full time. AR 584. On July 12, 2016, Tovar visited urgent care, requesting a work note. AR 307. He noted medication adjustments at his last psychiatric appointment caused diarrhea, so he had been unable to work. AR 307. He said he had since discontinued his medications and his gastrointestinal issues had resolved, and he also indicated that his anxiety and depression were under control. *Id.* The urgent care provider indicated he could return to work based on Dr. Zdilar's note from three weeks ago, and Tovar explained he wanted to be off work until his psychiatry appointment in three days, so the provider wrote him a work excuse. *Id.* At his appointment with Dr. Zdilar three days later, Tovar indicated he had not returned to work and mentioned applying for disability. AR 586. Dr. Zdilar's treatment notes reflect that when Dr. Zdilar "was very specific that [he was] not going to complete any[ ]more forms for [Tovar,] he suddenly changed his story stating he is ready to go back" to work and "does not need any restrictions to be included on release." *Id.* Dr. Zdilar expressed frustration with Tovar's recent behavior (which included discontinuing his medications without talking to Dr. Zdilar and self-treating with marijuana), but he wrote a work note for Tovar to return to work on July 19. AR 588.

On July 27, 2016, Tovar felt suicidal and was hospitalized (he had stopped taking his antidepressant medications a month previously). AR 302-03, 590. He met with Dr. Zdilar on August 23, 2016, reporting that before his hospitalization, work had been going well. AR 590. He indicated he was off work through September 14. *Id*. At his next appointment with Dr. Zdilar on September 15, 2016, he reported side effects from recent medication changes, as well as continuing to struggle with depression and anxiety. AR 593-94. Dr. Zdilar noted Tovar was not ready to return to work yet, as his past history demonstrated he would not be successful if he returned in his current mental state. AR 595. Tovar continued to report not feeling ready to return to work on October 4, although he indicated his depression and anxiety were "better," and he had been walking lately to prepare physically for his return to work. AR 598-99.

Target terminated Tovar's employment in October 2016. AR 602. Tovar did not see Dr. Zdilar again until April 2017, but then saw him regularly for medication management until August 2018, when he transferred care to psychiatric Nurse Practitioner Sara King (NP King). AR 750. Also in April 2017, Tovar began weekly therapy with Tasha Lowman, LISW (Therapist Lowman). AR 605. Tovar was hospitalized on four occasions in 2018 for suicidal ideation: from January 7 to 11, June 25 to 27, July 11 to 12, and September 7 to 10. AR 440-41, 444-47.

Tovar applied for disability in December 2017, alleging a disability onset date of July 2014, which was later adjusted to October 2016. AR 52, 77. The Social Security Administration denied Tovar's application for DI benefits on initial review in January 2018 and on reconsideration in April 2018. AR 74-99. Tovar requested review by an ALJ, who held a video hearing on May 14, 2019, at which Tovar and a vocational expert testified. AR 48-49. On June 3, 2019, the ALJ issued a written opinion, following the five-step process outlined in the regulations.[1] AR 23-31. The ALJ found Tovar suffered

---

[1] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of

4

from the following severe impairments: "depressive disorder, anxiety disorder, [and] marijuana abuse disorder." AR 25. For purposes of determining Tovar's ability to perform his past work (at step four) and other work (at step five), the ALJ determined Tovar's RFC[2]:

> [Tovar] has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: he could understand, remember, and appropriately carry out simple instructions; can use [judgment] in making simple work related decisions; deal with changes in routine work setting[s]; and have occasional contact with the public, coworkers, and supervisors.

AR 27. Based on his RFC, the ALJ found that Tovar could perform his past work as a warehouse worker or parts inspector. AR 30. Thus, the ALJ found Tovar not disabled. AR 30.

Tovar had been represented by counsel before the ALJ, but he filed a pro se appeal of the ALJ's decision to the Appeals Council. AR 183-86. As part of that appeal, he submitted additional medical-opinion evidence: a letter dated August 5, 2019, written by Therapist Lowman and additionally signed by NP King; and a letter dated August 13, 2019, from Frank Lamp, MD, who indicated he had treated Tovar's panic attacks prior to his retirement in 2013 and continued to keep in touch with Tovar through Tovar's friendship with his son. AR 7-8, 10-11. On April 8, 2020, the Appeals Council denied review. AR 1-3. The Appeals Council declined to exhibit the letters from Therapist Lowman and Dr. Lamp, finding they did "not show a reasonable probability that it would change the outcome of the decision." AR 2.

---

work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. § 404.1520(a)(4)**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

[2] RFC means "the most that a claimant can do despite her limitations." *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019).

The Appeals Council denied review on April 8, 2020 (AR 1-3), making the ALJ's decision that Tovar was not disabled the final decision of the Commissioner. *See* **20 C.F.R. § 404.981**. Tovar mailed his pro se complaint on Friday, June 12, 2020, and the clerk's office received the complaint for filing the following Monday. Doc. 1.[3] The Commissioner filed a disputed statement of facts. Doc. 16. After Tovar failed to file a brief in accordance with the briefing schedule, the Commissioner filed a brief responding to the arguments raised in Tovar's pro se complaint. *See* Doc. 17. The Honorable Leonard T. Strand, Chief United States District Judge for the Northern District of Iowa, referred this case to me for a report and recommendation.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." ***Kirby v. Astrue***, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." ***Kirby***, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." ***Naber v. Shalala***, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." ***Robinson v. Sullivan***, 956 F.2d 836, 838 (8th Cir. 1992).

---

[3] Upon receipt of the Appeals Council notice denying review, which a claimant is presumed to receive five days after the date listed on the notice, a claimant has sixty days to file an appeal. *See* **42 U.S.C. § 405(g)**; **20 C.F.R. § 422.210(c)**. Thus, the deadline for Tovar to file his complaint was Friday June 12, 2020, the date he placed it in the mail. Even if his complaint was untimely, however, "the 60-day requirement is not jurisdictional." ***Bowen v. City of New York***, 476 U.S. 467, 478 & n.10 (1986). The court declines to address the timeliness of Tovar's complaint in this case since the Commissioner does not raise that argument (Docs. 13, 17). *See id.*

Tovar suggests that his suicidal ideation and panic attacks render him more limited than found by the ALJ. Doc. 1. Tovar also challenges the Appeals Council's failure to admit new medical-opinion evidence into the record. *Id*. Finally, Tovar refers to an argument made in his pro se appeal to the Appeals Council that the ALJ erred at step two in finding he suffered "marijuana abuse disorder." *Id.*; AR 183-86.

### A. RFC

At the hearing in May 2019, Tovar testified to almost daily suicidal ideation "[u]p until a while ago." AR 55. He reported difficulty socializing and finding it hard to leave the house. AR 55, 64. He reported sleep difficulties, either being fatigued and sleeping too much, or having insomnia and being unable to fall and stay asleep. AR 54. He testified that he sometimes had difficulty showering and maintaining hygiene. AR 55. He said he suffered crying spells at least once a week, and he also had difficulty concentrating. AR 55. He testified that changes in routine caused anxiety resulting in either crying or hyperventilation and panic attacks, although he noted he could manage his anxiety symptoms depending on the environment. AR 56-57.

It is undisputed that Tovar suffers from depression and anxiety. *See* AR 25. But the ALJ found that Tovar's mental-health conditions did not render him as limited as he alleged, such that he could not work. AR 27. The ALJ noted that the treatment records reflected that Tovar's anxiety and concentration improved with medication. AR 28. Although Tovar missed work in 2015 and early 2016 due to anxiety (primarily related to a custody battle with his ex-wife), his treating psychiatrist at the time, Dr. Zdilar, ultimately told Tovar in July 2016 that he would not be writing any more work excuses for him, which the ALJ noted suggested Dr. Zdilar did not believe Tovar was disabled. AR 28, 585. The treatment records from 2017 through 2019 mostly reflect that Tovar's anxiety was "manageable" or had "stabilized," and Tovar reported suffering only a few panic attacks a year. AR 297, 302, 396, 414, 499, 590, 594, 598, 602, 622, 636, 663, 671, 679, 700, 708, 711, 713, 729, 751, 758, 773, 790, 799, 809, 812, 817, 820, 823,

7

829, 832. Therapist Lowman's treatment records do reflect that Tovar managed his mental health symptoms through routine (AR 765, 779, 781-82, 787, 817, 832), and he reported his September 2018 hospitalization for suicidal ideation was the result of a broken toe throwing off his routine (AR 440-41, 762). Otherwise, the treatment records do not reflect that Tovar reported crying spells or anxiety attacks from changes in routine, as he testified. *See* AR 681, 727, 736, 800.

The ALJ recognized that Tovar was hospitalized for suicidal ideation on several occasions in 2018. AR 28. But the ALJ found that apart from those periods of hospitalization, Tovar's depression symptoms were pretty stable and well-managed with medications. *Id*. The ALJ concluded that Tovar's "symptoms waxed and waned primarily related to a tumultuous custody battle," but he figured out ways to cope. *Id*. Substantial evidence supports the ALJ's conclusion. Tovar rarely reported suicidal ideation at his mental-health appointments. As the ALJ noted, Tovar reported being in a "pretty stable spot" in October 2017 (AR 297); he reported "feeling a lot better" after medication adjustments made during his January 2018 hospitalization (AR 410, 693, 695-98, 725, 728; *but see* AR 711, 715-16); and he reported "things are going well now" and he was "handling emotions better" in August 2018, after his June and July 2018 hospitalizations (AR 751-53, 756, 758, 760). After his last hospitalization for suicidal ideation in September 2018, the treatment records reflect improvement in Tovar's depression symptoms (although he still suffered depression symptoms at times, as recognized by the ALJ). *See* AR 501, 507, 767, 771, 812-13, 823, 828-29, 836-38

The ALJ also pointed to Tovar's activities of daily living. AR 29. Treatment records from April 2017, October 2017, January 2018, and March 2018 mention that Tovar worked part-time for himself fixing computers for the elderly. AR 297, 360, 396, 663, 712, 724. In November and December 2017, he worked construction with a friend sixteen to twenty hours a week, reporting that he could not work more hours because of the physical toll on his body (not his mental health). AR 678, 681, 683, 687. From the summer of 2018 through the hearing in May 2019, he reported live-streaming video

games to earn a little income. AR 59, 739, 748, 767, 777, 779, 782, 800, 803, 809, 817, 820, 823, 827, 838. In the fall of 2018, he also reported working on an elderly man's farm doing yard work. AR 60, 455. Tovar told Therapist Lowman in January 2018 that he thought he might be able to function at a part-time job, and he told providers on several occasions that he was thinking about going back to school. AR 697, 712, 724, 751. He reported working on his car, watching movies, and playing the game Mine Craft. AR 547, 560. In March 2019, he told Therapist Lowman that he was looking forward to an upcoming concert with friends; when questioned by the ALJ about the concert, he said he had not yet attended and that he might not be able to make it if his son's mother was not able to watch their son. AR 65-66, 829. He reported practicing a comedy routine for an open mic night. AR 554, 560. For some of the relevant time period, he lived alone, and reported keeping the house picked up and cooking for himself. AR 602, 696, 817. Although the treatment records reflect Tovar reported struggling with hygiene on a few occasions (AR 353, 602, 663, 691), he more often told his mental health providers that he was able to shower daily and attend to his hygiene (AR 614, 636, 689, 697, 708, 817). Similarly, although providers noted Tovar's "disheveled" or "malodorous" appearance at times (AR 450, 666-67, 670, 686, 692, 741, 761), most of the objective examinations note Tovar was "well groomed" or "fairly well groomed." AR 598, 602, 614, 622, 636, 649-50, 663, 683, 711, 713, 724, 751, 773, 789, 812.

Courts owe deference to an ALJ's decision not to fully credit a claimant's testimony about his limitations. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007). Here, substantial evidence supports the ALJ's determination that Tovar was not as limited as alleged. I recommend finding that the ALJ did not err in formulating Tovar's RFC.

### B. Medical Opinions

As part of his pro se appeal of the ALJ's decision, Tovar submitted letters from Therapist Lowman (cosigned by NP King) and Dr. Lamp. AR 7-8, 10-11. The Appeals

9

Council considered this evidence but found it "does not show a reasonable probability that it would change the outcome of the decision" and declined to "exhibit this evidence." AR 2. Tovar challenges this decision.

As the Commissioner notes, when "it is clear that the Appeals Council . . . considered newly submitted evidence," the court does "not evaluate the Appeals Council's decision to deny review." *Riley v. Shalala*, 18 F.3d 619, 622–23 (8th Cir. 1994). Instead, the court determines "whether the [ALJ's] determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made." *Id.*

Here, as part of his appeal, Tovar submitted a new letter from Therapist Lowman (and cosigned by NP King) dated August 5, 2019, after the ALJ's decision. Therapist Lowman's letter noted that Tovar attended weekly therapy sessions with her and that he had been hospitalized for suicidal ideation in the past. AR 10-11. She noted that he usually appeared depressed "and/or" anxious during their sessions and that he struggled daily with suicidal ideation. *Id.* She stated that at times, he struggled to get out of bed, leave the house, and perform basic household tasks. *Id.* She noted when he struggled with sleep, it affected his anxiety and depression. *Id.* She stated he suffered panic attacks and could only "keep a routine going . . . for short periods of time." *Id.*

Although the ALJ did not consider this letter, the ALJ did consider a November 2017 opinion by Therapist Lowman and an April 2019 opinion by NP King that were in the record at the time of the ALJ's decision. AR 28-29. Therapist Lowman and NP King both filled out forms indicating that Tovar had no difficulties understanding, remembering, or carrying out short and simple instructions; and mild difficulties interacting appropriately with the public, coworkers, and supervisors. AR 843-44, 848-49. In addition, Therapist Lowman found Tovar markedly limited in his ability to respond to work pressures and to changes in a routine work setting, while NP King found him moderately limited in those categories. AR 844, 849. Therapist Lowman also noted Tovar suffered periods of isolation and "inability to get out." AR 849. The ALJ found

these opinions were "not consistent with or well supported by the evidence of record," citing the treatment records and Tovar's activities of daily living. AR 29. Substantial evidence, discussed in the previous section, supports this conclusion.

Therapist Lowman's August 2019 letter reflects similar limitations as in the opinion evidence already before the ALJ, which the ALJ found inconsistent with the record as a whole. The letter also recites information contained in the treatment records already before the ALJ. The letter would not have mandated a change in the ALJ's decision, and substantial evidence still supports the ALJ's opinion, even considering the August 2019 letter.

Tovar also submitted to the Appeals Council an August 2019 letter written by Dr. Lamp. AR 7-8. Dr. Lamp's letter indicated that he treated Tovar's panic attacks from 2006 through 2013 and kept in touch with Tovar through his son's friendship with Tovar. AR 7-8. Dr. Lamp suggested that Tovar's panic attacks would prevent him from being able to work. *Id.*

Tovar alleged a disability onset date of October 1, 2016, well after Dr. Lamp had retired and stopped treating Tovar. In any event, even if Dr. Lamp's opinion bears on the relevant time period, the treatment records support the ALJ's conclusion that Tovar's panic attacks improved greatly for most of the relevant time period, and he reported suffering only a few panic attacks a year. Thus, Dr. Lamp's opinion is inconsistent with the treatment notes of record.

Substantial evidence supports the ALJ's decision, even considering the new evidence submitted to the Appeals Council.

### C. *Marijuana Abuse Disorder*

Tovar's complaint argues that the ALJ cannot "chang[e] a diagnosis," noting that in his Appeals Council appeal, he argued "that the [ALJ] had changed a diagnosis from [his] medical records for the decision [the ALJ] reached." Doc. 1. Tovar appears to be referring to his argument that the ALJ erred in including marijuana abuse disorder as a

severe impairment at step two. AR 184. In his letter to the Appeals Council, Tovar argued that he does not "have such a diagnosis," and the "closest thing" would be NP King's treatment records reflecting a diagnosis of marijuana dependency. *Id*. Tovar argues that "the use, not abuse, is limited to the need for relief from symptoms." *Id*.

No provider prescribed marijuana to Tovar to treat his anxiety and depression. Treatment records reflect that multiple providers cautioned Tovar against self-medicating his mental-health symptoms with marijuana. AR 412, 446, 588. When listing diagnoses for Tovar, two providers included "marijuana use" (AR 500, 752), and upon his discharge from the hospital on one occasion, "marijuana abuse" was included as a diagnosis (AR 446). I recommend finding that the ALJ did not err in including marijuana abuse as a severe impairment at step two.

### III. CONCLUSION

I recommend **affirming** the ALJ's decision and entering judgment in favor of the Commissioner.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. **Fed. R. Civ. P. 72**. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 4th day of August, 2021.

_____
Kelly K.E. Mahoney
United States Chief Magistrate Judge
Northern District of Iowa